UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

Chambers of                                                                                101 West Lombard Street
**GEORGE L. RUSSELL, III**                                                      Baltimore, Maryland 21201
Chief United States District Judge                                                      410-962-4055

June 22, 2026

MEMORANDUM TO COUNSEL RE:                    Franco-Melgar v. Mullin, et al.
                                                                              Civil Action No. GLR-26-2059

Dear Counsel:

Pending before the Court is Petitioner Vilma Franco-Melgar's Petition for Writ of Habeas Corpus (ECF No. 1). No hearing is necessary to resolve the Petition. See Local Rule 105.6 (D.Md. 2025). For the reasons set forth below, the Court will dismiss the Petition as moot.

**Background**

Franco-Melgar is a citizen and native of Honduras who entered the United States on or around April 20, 2005. (Pet. Writ Habeas Corpus ["Pet."] ¶¶ 1, 13, ECF No. 1). She later applied for asylum, statutory withholding of removal as to Honduras, and protection under the Convention Against Torture ("CAT"). (Id. ¶ 1). On November 14, 2019, an Immigration Judge ("IJ") ordered Franco-Melgar removed to Honduras but granted her withholding of removal as to Honduras under CAT. (Id.; IJ Order at 2, ECF No. 1-3).[1] Franco-Melgar was placed under an Order of Supervision ("OSUP") and has been reporting to Immigration and Customs Enforcement ("ICE") consistently. (Pet. ¶¶ 2, 14). She reported to ICE in Baltimore as scheduled on May 26, 2026, where "ICE officers suddenly rearrested [her] without a warrant, revoked her [OSUP] without notice and a hearing, and placed her into detention, threatening removal to a third country." (Id. ¶ 14).

On May 26, 2026, while detained in Baltimore, Franco-Melgar filed the instant Petition for Writ of Habeas Corpus, alleging that her arrest and detention violated the due process clause of the Fifth Amendment, the Fourth Amendment, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. (Pet. ¶¶ 23–38, 42–45). She also requested relief under the Mandamus Act, 28 U.S.C. § 1361. (Id. ¶¶ 39–41). Shortly after filing her Petition, Franco-Melgar filed a Motion for Temporary Restraining Order ("TRO"), in which she sought her immediate release from custody. (Mot. TRO at 2–3, ECF No. 4). Respondents Markwayne Mullin, Todd Blanche, Todd Lyons, and Vernon Liggins' (collectively "Respondents" or "the Government") filed an Opposition on June 2, 2026, (ECF No. 11), and Franco-Melgar filed a Reply on June 3, 2026, (ECF No. 12). On June 4, 2026, the Court granted Franco-Melgar's Motion and issued a TRO, directing Respondents to release her immediately. (June 4, 2026 Order at 6–7, ECF No. 13). Respondents filed a Status Report on June 8, 2026, indicating that Franco-Melgar was transported

---

[1] Unless otherwise noted, citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

back from Virginia to the Baltimore ICE Field Office and released from custody on June 5, 2026. (June 8, 2026 Status Report at 1, ECF No. 14).

In accordance with the Parties' Proposed Briefing Schedule, (ECF No. 9), Respondents filed a Response to the Petition on June 11, 2026, (ECF No. 10), and Franco-Melgar filed a Reply on June 15, 2026, (ECF No. 16).

**Analysis**

In their Response to the Petition, Respondents argue that the Petition is moot and that the case should be closed because Franco-Melgar has been released from custody under the TRO. (Resp. Pet. Writ Habeas Corpus ["Resp."] at 1–2, ECF No. 15). Franco-Melgar does not oppose closure of the case but requests that the Court enter a limited injunction, preventing Respondents from re-detaining her under the same statutory theory absent materially changed circumstances. (Pet.'s Reply Resp'ts' Resp. Pet. Writ Habeas Corpus at 2, ECF No. 16). The Court agrees with Respondents and will dismiss the Petition as moot.

Federal courts "only have jurisdiction to resolve 'cases or controversies,' and there is no case or controversy if the litigation is moot. A case is moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" Deussom v. Noem, No. 1:25-CV-00404-MSN-IDD, 2026 WL 269265, at *2 (E.D.Va. Feb. 2, 2026) (first quoting Qiu v. Mayorkas, No. 3:23CV413 (RCY), 2024 WL 329140, at *2 (E.D.Va. Jan. 29, 2024); and then quoting Porter v. Clarke, 852 F.3d 358, 363 (4th Cir. 2017)). "Mootness is a jurisdictional question and thus may be raised sua sponte by a federal court at any stage of proceedings." Palacio v. Sullivan, 814 F.App'x 774, 775 (4th Cir. 2020) (quoting United States v. Springer, 715 F.3d 535, 540 (4th Cir. 2013)).

In cases such as this, where "a habeas petitioner challenges solely [her] detention, but is subsequently released . . . , courts routinely dismiss the petition as moot, finding no persisting case in controversy." Pena v. Lynch, 257 F.Supp.3d 346, 347 (S.D.N.Y. 2017) (quoting Karamoke v. U.S. Homeland Sec., No. 09-CV-4089 (GBD) (JCF), 2009 WL 2575886, at *1 (S.D.N.Y. Aug. 20, 2009)); Drabovskiy v. U.S. Dep't of Homeland Sec., No. 3:14-CV-451, 2014 WL 12493327, at *4 (M.D.Pa. Mar. 12, 2014) ("In the context of federal habeas corpus petitions brought by immigration detainees, it is well-settled that the release of an immigration detainee from ICE custody renders moot any further complaints regarding the fact of that detention."), report and recommendation adopted in part, No. 3:14-CV-451, 2014 WL 11395647 (M.D.Pa. Mar. 24, 2014), aff'd, 573 F.App'x 93 (3d Cir. 2014); see, e.g., Chocho v. Shanahan, 308 F.Supp.3d 772, 774–75 (S.D.N.Y. 2018) (finding habeas petition moot where petitioner was released from ICE custody); Hubacek v. Holder, No. 13-CV-1085C, 2014 WL 1096949, at *1–3 (W.D.N.Y. Mar. 19, 2014) (denying reconsideration of decision to dismiss habeas petition as moot because petitioner was released from ICE custody).

"A habeas corpus petition is not moot, however, merely because the petitioner is no longer in custody. Rather, the relevant inquiry is whether the petitioner is subject to collateral consequences adequate to meet the injury-in-fact requirement of Article III." Pinnock v. Gonzales, No. CIV-07-254-M, 2007 WL 2155786, at *2 (W.D.Okla. July 24, 2007) (citing Spencer v. Kemna, 523 U.S. 1, 7 (1998)); see, e.g., Ortiz Martinez v. Wamsley, No. 2:25-CV-

2

01822-TMC, 2025 WL 2899116, at *3–4 (W.D.Wash. Oct. 10, 2025) (finding some collateral consequence remained for petitioners who were released under TRO but still faced "'the threat of re-arrest and mandatory detention' under the same detention scheme" that the court "ha[d] already declared unlawful as applied to them," and the Government maintained that petitioners were subject to mandatory detention); see also Hoang Trinh v. Homan, 333 F.Supp.3d 984, 990–91 (C.D.Cal. 2018) (finding some collateral consequence remained for petitioners who were released from ICE custody but also sought declaratory judgment that their removals were not reasonably foreseeable and that they were entitled to individualized bond hearings).

The possibility of future re-detainment under an order of removal or order of supervision does not render an otherwise moot habeas petition live because the future detainment would be a "collateral consequence" of the underlying order and not of the detainment that is the subject of the petitioner's habeas petition. See Camara v. Canfort, 235 F.Supp.2d 1174, 1176 (D.Colo. 2002) (finding petitioner's habeas challenge to continued detention and request for release from custody moot by his release on order of supervision because "the conditions in the order of supervision," and the possibility that he will be deported in the future, "flow, not from Petitioner's illegal detention, but from the final order of removal," and, therefore, "are not collateral consequences of Petitioner's detention"); Chocho, 308 F.Supp.3d at 774 (finding no collateral consequence where Respondents "promised to re-arrest Petitioner and hold him without bond if USCIS denies his petition for a U Visa" because "any continuing injury would result from the removal order, and this Court lacks jurisdiction to hear any challenge to the removal order" (citation omitted)); Sokolov v. Holder, No. 13 CIV. 0947 (PAE), 2013 WL 12377011, at *3–4 (S.D.N.Y. Aug. 13, 2013) (finding habeas petition moot after petitioner was released on order of supervision, stating that "[a]ny future detention based on a violation of the Order of Supervision would not be a 'collateral consequence' of the detention challenged in the petition, but of [petitioner's] final order of removal, which he does not contest here").

In this case, Franco-Melgar only challenges her detention. (See Pet. ¶¶ 23–45). Respondents detained Franco-Melgar on May 26, 2026, allegedly because ICE intended to remove her to Mexico "expeditiously." (Resp. Mot. TRO at 8, ECF No. 11; Notice Removal, ECF No. 11-4). Respondents released Franco-Melgar from custody in accordance with this Court's TRO and reinstated the OSUP that was in place prior to her arrest. (June 4, 2026 Order at 6–7; June 8, 2026 Status Report at 1). Respondents now state that Franco-Melgar's claims are moot due to her release. (Resp. at 1). Respondents do not suggest that Franco-Melgar cannot be removed imminently or that there is no basis for her immediate re-detention. But, while the Court found that Respondents' revocation of Franco-Melgar's OSUP was likely unlawful, (June 4, 2026 Order at 3–4), the Court has not found that Franco-Melgar's removal to a third country or re-detention pending her reasonably foreseeable removal would be unlawful. Contra Ortiz Martinez, 2025 WL 2899116, at *3–4 (finding petition was not moot due to petitioners' release under TRO because they faced "'the threat of re-arrest and mandatory detention' under the same detention scheme" that the court "had already declared unlawful as applied to them" and that the Government maintained was appropriate). Thus, the possibility of Respondents re-detaining Franco-Melgar under the same detention scheme does not present a collateral consequence of her May 26, 2026 detention. Rather, it would be a result of her removal order or conditions of release.

Accordingly, Franco-Melgar's Petition is moot. See Pena, 257 F.Supp.3d at 347–48; Camara, 235 F.Supp.2d at 1176.[2]

**<u>Conclusion</u>**

For the foregoing reasons, it is hereby ORDERED that Franco-Melgar's Petition for Writ of Habeas Corpus (ECF No. 1) is DISMISSED AS MOOT. The Clerk shall PROVIDE a copy of this Order to all counsel of record and CLOSE this case. Despite the informal nature of this memorandum, it shall constitute an Order of the Court, and the Clerk is directed to docket it accordingly.

Very truly yours,

_____/s/_____
George L. Russell, III
Chief United States District Judge

---

[2] This conclusion covers Franco-Melgar's request for declaratory relief because she "seeks a declaration with respect to the lawfulness of [her] detention, which is no longer the subject of any case or controversy." Pena, 257 F.Supp.3d at 348 n.1; see also Chocho, 308 F.Supp.3d at 774 (finding that petitioner's request for declaratory judgment did not change court's conclusion that petitioner was no longer suffering an "actual injury" after being released from custody, suggesting that such relief would constitute an advisory opinion (citing Velvet Underground v. Andy Warhol Found., for the Visual Arts, Inc., 890 F.Supp.2d 398, 403 (S.D.N.Y. 2012))).